**F I L E D**
CLERK, U.S. DISTRICT COURT

4/10/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:26-cr-00211-MEMF |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing in Firearms Without a License; 18 U.S.C. § 922(a)(1)(A): Engaging in the Business of Dealing in Firearms Without a License; 18 U.S.C. § 922(g)(5)(A): Alien in Possession of Firearms and Ammunition; 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B): Distribution of and Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 924(c)(1)(A)(i): Possession of Firearms in Furtherance of Drug Trafficking Crimes; 18 U.S.C. § 933(a)(1): Trafficking in Firearms; 26 U.S.C. § 5861(d): Possession of an Unregistered Short-Barreled Rifle; 26 U.S.C. § 5861(d): Possession of a Destructive Device; 18 U.S.C. §§ 981(a)(1)(C), 924(d), 934, 21 U.S.C. § 853, 26 U.S.C. § 5872, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| JOSE LUIS SALAZAR-CRUZ, aka "Oso," ALFONSO SALAZAR, aka "Pirate," JOSE MANUEL SALAZAR, aka "Lil Oso," JORGE HUMBERTO SALAZAR, aka "Sharky," and JOSE ANGEL LOPEZ PANIAGUA, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.    OBJECTS OF THE CONSPIRACY

Beginning no later than on or about February 8, 2024, and continuing until at least on or about December 19, 2025, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," ALFONSO SALAZAR, aka "Pirate," JOSE MANUEL SALAZAR, aka "Lil Oso," JORGE HUMBERTO SALAZAR, aka "Sharky," and JOSE ANGEL LOPEZ PANIAGUA conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute the following:

1.    At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii); and

2.    At least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(vi).

B.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendant SALAZAR-CRUZ would use text messaging applications, encrypted messaging applications, telephone calls, and

2

in-person meetings to coordinate the sale of controlled substances, including methamphetamine and fentanyl.

2.    Defendants SALAZAR-CRUZ, A. SALAZAR, and J.H. SALAZAR would broker sales of methamphetamine and fentanyl between suppliers and customers.

3.    Defendants SALAZAR-CRUZ, A. SALAZAR, J.M. SALAZAR, J.H. SALAZAR, and PANIAGUA would meet with customers to sell methamphetamine and fentanyl.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants SALAZAR-CRUZ, A. SALAZAR, J.M. SALAZAR, J.H. SALAZAR, and PANIAGUA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On February 8, 2024, defendant SALAZAR-CRUZ met with an individual he believed was a drug customer, but who was, in fact, an undercover law enforcement officer ("UC-1"), and sold UC-1 approximately 894.2 grams of methamphetamine.

Overt Act No. 2:    On February 8, 2024, defendant SALAZAR-CRUZ discussed future sales of controlled substances with UC-1 and told UC-1 that future sales would need to occur through the mail.

Overt Act No. 3:    On March 20, 2024, defendant SALAZAR-CRUZ discussed with UC-1 the logistics of a second sale of methamphetamine and received payment from UC-1 by mail.

Overt Act No. 4:    On March 21, 2024, defendant SALAZAR-CRUZ mailed UC-1 approximately 447.6 grams of methamphetamine.

Overt Act No. 5:    On December 14, 2024, defendant SALAZAR-CRUZ met with an individual he believed was a drug customer, but who was, in fact, an undercover law enforcement officer ("UC-2"), to discuss the sale of controlled substances.

Overt Act No. 6:    On December 17, 2024, defendant SALAZAR-CRUZ met with UC-2, sold UC-2 approximately 454.3 grams of methamphetamine, and discussed with UC-2 the quality of fentanyl and cocaine that defendant SALAZAR-CRUZ had for sale.

Overt Act No. 7:    On January 14, 2025, defendant SALAZAR-CRUZ agreed to meet with UC-2 later in the month to sell methamphetamine and fentanyl.

Overt Act No. 8:    On January 21, 2025, defendant SALAZAR-CRUZ met with UC-2 and, during the meeting, called defendants A. SALAZAR and J.M. SALAZAR to discuss the sale of firearms and controlled substances.

Overt Act No. 9:    On January 21, 2025, defendant SALAZAR-CRUZ spoke with defendant A. SALAZAR about how to break down a kilogram of fentanyl for further distribution.

Overt Act No. 10:    On January 21, 2025, after speaking to defendants A. SALAZAR and J.M. SALAZAR on the phone, defendant SALAZAR-CRUZ sold UC-2 approximately 445.9 grams of methamphetamine and approximately 324 grams of fentanyl.

Overt Act No. 11:    On January 23, 2025, defendant SALAZAR-CRUZ met with UC-2 and told UC-2 that defendant SALAZAR-CRUZ also sold fentanyl in Indiana and Louisville.

Overt Act No. 12:    On January 23, 2025, defendant SALAZAR-CRUZ sold UC-2 approximately 246.3 grams of fentanyl.

Overt Act No. 13:   On January 23, 2025, defendant SALAZAR-CRUZ told UC-2 that he typically did not break down kilogram quantities of fentanyl for sale, but that he would do so for UC-2 to further their business relationship.

Overt Act No. 14:   On March 5, 2025, defendant SALAZAR-CRUZ met with UC-2 and another individual he believed to be a drug customer, but who was, in fact, an undercover law enforcement officer ("UC-3"), and sold UC-2 and UC-3 approximately 251 grams of fentanyl.

Overt Act No. 15:   On April 16, 2025, defendants SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA met with UC-1 and sold UC-1 approximately 251.1 grams of fentanyl.

Overt Act No. 16:   On May 5, 2025, defendant SALAZAR-CRUZ discussed the sale of controlled substances with individuals he believed were drug customers, but who were, in fact, a confidential informant working at the direction of law enforcement ("CI-1"), and an undercover law enforcement officer ("UC-4").

Overt Act No. 17:   On May 5, 2025, defendant SALAZAR-CRUZ provided UC-4 with a phone number for defendant A. SALAZAR, and defendants SALAZAR-CRUZ and A. SALAZAR coordinated with UC-4 about a future sale of controlled substances.

Overt Act No. 18:   On May 28, 2025, defendants SALAZAR-CRUZ, A. SALAZAR, and J.H. SALAZAR met with UC-4, discussed the sale of fentanyl and methamphetamine, and told UC-4 that their drug supply came from Tijuana and Mexicali, Mexico.

Overt Act No. 19:   On May 28, 2025, defendants SALAZAR-CRUZ and A. SALAZAR traveled with UC-4 to a location in Lancaster, where defendants SALAZAR-CRUZ and A. SALAZAR sold UC-4 approximately 886.8 grams of methamphetamine.

Overt Act No. 20:   On July 30, 2025, defendant SALAZAR-CRUZ met with UC-2 and sold UC-2 approximately 1,152.8 grams of methamphetamine.

Overt Act No. 21:   On December 19, 2025, defendants SALAZAR-CRUZ and PANIAGUA met with UC-2 and sold UC-2 approximately 2,265 grams of methamphetamine.

COUNT TWO

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATION

At times relevant to this Indictment, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," ALFONSO SALAZAR, aka "Pirate," JOSE MANUEL SALAZAR, aka "Lil Oso," JORGE HUMBERTO SALAZAR, aka "Sharky," and JOSE ANGEL LOPEZ PANIAGUA did not have a federal firearms license issued by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives, and thus were not licensed to import, manufacture, or deal in firearms.

B.   OBJECT OF THE CONSPIRACY

Beginning no later than on or about December 16, 2024, and continuing to at least on or about July 30, 2025, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants SALAZAR-CRUZ, A. SALAZAR, J.M. SALAZAR, J.H. SALAZAR, and PANIAGUA conspired with each other and others known and unknown to the Grand Jury to engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

C.   MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendant SALAZAR-CRUZ would use text messaging applications, encrypted messaging applications, telephone calls, and in-person meetings to coordinate the sale of firearms.

2.    Defendants SALAZAR-CRUZ, A. SALAZAR, and J.H. SALAZAR would coordinate among themselves and with firearms customers to facilitate sales of firearms.

3.    Defendants SALAZAR-CRUZ, A. SALAZAR, J.M. SALAZAR, J.H. SALAZAR, and PANIAGUA would sell, or assist with the sale of, firearms to customers.

D.    OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants SALAZAR-CRUZ, A. SALAZAR, J.M. SALAZAR, J.H. SALAZAR, and PANIAGUA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On December 14, 2024, via telephone, defendant SALAZAR-CRUZ discussed the sale of firearms with an individual he believed was a firearms customer, but who was, in fact, an undercover law enforcement officer ("UC-2"), and agreed to meet UC-2 for future sales of firearms.

Overt Act No. 2:    On December 16, 2024, defendant SALAZAR-CRUZ met with UC-2 and sold UC-2 three firearms, namely, a Cobray S/S, 12-gauge shotgun, bearing serial number SH540, a Defcon-15, .223 caliber rifle, bearing serial number AB000117, and a Smith and Wesson SD40 VE, .40 caliber pistol, bearing serial number FXN6379.

Overt Act No. 3:    On December 17, 2024, defendant SALAZAR-CRUZ met with UC-2 to discuss the further sale of firearms.

Overt Act No. 4:    On December 17, 2024, defendant SALAZAR-CRUZ sold UC-2 two firearms, namely, a NORINCO, 7.62 caliber rifle, bearing serial number 9358116, and a privately manufactured AR-style

8

rifle, bearing no serial number (commonly referred to as a "ghost gun").

Overt Act No. 5: On January 14, 2025, via text message, defendant SALAZAR-CRUZ discussed future sales of firearms with UC-2.

Overt Act No. 6: On January 21, 2025, via text message, defendant SALAZAR-CRUZ coordinated a second meeting with UC-2 to sell firearms.

Overt Act No. 7: On January 21, 2025, defendant SALAZAR-CRUZ met with UC-2 to sell firearms.

Overt Act No. 8: On January 21, 2025, during the meeting with UC-2, defendant SALAZAR-CRUZ called defendant A. SALAZAR and asked whether there were any other firearms to sell to UC-2.

Overt Act No. 9: On January 21, 2025, during the meeting with UC-2, defendant SALAZAR-CRUZ called defendant J.M. SALAZAR and asked for the location of a specific firearm.

Overt Act No. 10: On January 21, 2025, defendant SALAZAR-CRUZ sold firearms to UC-2, including a Just Right Carbines, LLC J R CARBINE, multi-caliber rifle, bearing serial number JRCV045882, a Glock, model 21, .45 caliber pistol, bearing serial number BNB617US, and an IZHMASH IJ70, 9mm caliber pistol, bearing serial number A OT 1318.

Overt Act No. 11: On January 21, 2025, defendant SALAZAR-CRUZ told UC-2 that he had tested both the Glock .45 caliber pistol and the LLC J R CARBINE, multi-caliber rifle for functionality.

Overt Act No. 12: On January 22, 2025, defendant SALAZAR-CRUZ discussed with UC-2 the sale of a fully automatic Uzi and agreed to meet with UC-2 the following day.

Overt Act No. 13:   On January 23, 2025, defendant SALAZAR-CRUZ told UC-2 by telephone that he did not have the fully automatic Uzi for sale but did have other firearms for sale.

Overt Act No. 14:   On January 23, 2025, defendant SALAZAR-CRUZ met with UC-2 and sold UC-2 two firearms, including a Smith and Wesson M&P 9 Shield, 9mm caliber pistol, bearing serial number NEL6813, and a Taurus model PT101P, .40 caliber pistol, bearing serial number SCT28627.

Overt Act No. 15:   On March 4, 2025, defendant SALAZAR-CRUZ discussed the sale of firearms with UC-2.

Overt Act No. 16:   On March 5, 2025, defendant SALAZAR-CRUZ met with UC-2 and another individual he believed was a firearms customer, but who was, in fact, an undercover law enforcement officer ("UC-3"), led UC-2 to garage, and removed several firearms from a storage container.

Overt Act No. 17:   On March 5, 2025, defendant SALAZAR-CRUZ sold UC-2 a Taurus G3, 9mm caliber pistol, bearing serial number ACD736317, an American Tactical Imports – ATI FXH-45, .45 caliber pistol, bearing serial number TB114942, and a Palmetto State Armory PA-15, AR-15 style rifle, bearing serial number SCB908110.

Overt Act No. 18:    On April 9, 2025, via text message, defendant SALAZAR-CRUZ sent UC-2 the photographs below of firearms.



Overt Act No. 19:    On April 9, 2025, defendant SALAZAR-CRUZ told UC-2 that the rifle-style firearm depicted in the photograph was a "fully" automatic firearm and agreed to meet with UC-2 on April 16, 2025.

Overt Act No. 20:    On April 16, 2025, defendants SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA sold UC-2 a Masterpiece Arms, model MPA30T, 9mm caliber pistol, bearing serial number FX56940, and a privately manufactured .223 caliber AR-15 style short-barreled rifle, bearing no serial number (commonly referred to as a "ghost gun").

Overt Act No. 21:    On May 5, 2025, defendants SALAZAR-CRUZ and A. SALAZAR discussed the sale of firearms to potential new buyers, including individuals they believed were firearms customers, but who were, in fact, a confidential informant working at the direction of law enforcement ("CI-1"), and an undercover law enforcement officer ("UC-4").

11

Overt Act No. 22:   On May 5, 2025, defendant SALAZAR-CRUZ spoke with UC-4 over the telephone, provided UC-4 with a separate phone number, and discussed future sales of firearms.

Overt Act No. 23:   On May 5, 2025, defendant SALAZAR-CRUZ agreed to meet with UC-4 on May 28, 2025.

Overt Act No. 24:   On May 28, 2025, defendants SALAZAR-CRUZ and A. SALAZAR met with UC-4 at a restaurant in Palmdale.

Overt Act No. 25:   On May 28, 2025, defendants SALAZAR-CRUZ, A. SALAZAR, J.H. SALAZAR, and J.M. SALAZAR traveled with UC-4 to a second restaurant in Palmdale.

Overt Act No. 26:   On May 28, 2025, defendants SALAZAR-CRUZ, A. SALAZAR, J.H. SALAZAR, and J.M. SALAZAR told UC-4 that: their supply of drugs and firearms came from Tijuana and Mexicali, Mexico by traveling across the border via trailer; defendant PANIAGUA obtained the drugs and firearms from members of the Sinaloa cartel; and defendant PANIAGUA provided the drugs and firearms to defendant SALAZAR-CRUZ in exchange for money.

Overt Act No. 27:   On May 28, 2025, defendant SALAZAR-CRUZ, defendant A. SALAZAR, and UC-4 traveled to defendant SALAZAR-CRUZ's residence in Lancaster, after which defendant A. SALAZAR and UC-4 traveled to a separate residence, where defendant A. SALAZAR sold UC-4 a Ruger, model 5.7, 5.7x28mm caliber pistol, bearing serial number 643-53862.

Overt Act No. 28:   On July 30, 2025, defendant SALAZAR-CRUZ met with UC-2 and told UC-2 that he could sell UC-2 machinegun conversion devices.

Overt Act No. 29:   On July 30, 2025, defendant SALAZAR-CRUZ sold UC-2 a Springfield Armory, model 1911A1, .45 caliber pistol, bearing serial number NM185438.

COUNT THREE

[18 U.S.C. §§ 922(a)(1)(A), 2(a)]

[ALL DEFENDANTS]

Beginning no later than on or about December 16, 2024, and continuing to at least on or about July 30, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," ALFONSO SALAZAR, aka "Pirate," JOSE MANUEL SALAZAR, aka "Lil Oso," JORGE HUMBERTO SALAZAR, aka "Sharky," and JOSE ANGEL LOPEZ PANIAGUA, each aiding and abetting the others, not being licensed as importers, manufacturers, or dealers of firearms, willfully engaged in the business of dealing in firearms, specifically, the sales of the following firearms, on or about the following dates:

| DATE | DEFENDANT(S) | FIREARM(S) |
| --- | --- | --- |
| December 16, 2024 | SALAZAR-CRUZ | Cobray S/S, 12-gauge shotgun, bearing serial number SH540 |
| December 16, 2024 | SALAZAR-CRUZ | Defcon-15, .223 caliber rifle, bearing serial number AB000117 |
| December 16, 2024 | SALAZAR-CRUZ | Smith & Wesson SD40 VE, .40 caliber pistol, bearing serial number FXN6379 |
| December 17, 2024 | SALAZAR-CRUZ | NORINCO, 7.62 caliber rifle, bearing serial number 9358116 |
| December 17, 2024 | SALAZAR-CRUZ | Privately manufactured AR-style firearm (commonly referred to as a "ghost gun") |

14

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| January 21, 2025 | SALAZAR-CRUZ, A. SALAZAR, and J.M. SALAZAR | (1) Just Right Carbine, LLC J R Carbine, multi-caliber rifle, bearing serial number JRCV045882;<br><br>(2) Glock, model 21, .45 caliber pistol, bearing BNB617US; and<br><br>(3) IZHMASH IJ70, 9mm caliber pistol, bearing serial number A OT 1318 |
| January 23, 2025 | SALAZAR-CRUZ | Smith & Wesson M&P 9 Shield, 9mm caliber pistol, bearing serial number NEL6813 |
| January 23, 2025 | SALAZAR-CRUZ | Taurus, model PT101P, .40 caliber pistol, bearing serial number SCT28627 |
| March 5, 2025 | SALAZAR-CRUZ | Taurus G3, 9mm caliber pistol, bearing serial number ACD736317 |
| March 5, 2025 | SALAZAR-CRUZ | American Tactical Imports ATI FXH-45, .45 caliber pistol, bearing serial number TB114942 |
| March 5, 2025 | SALAZAR-CRUZ | Palmetto State Armory PA-15, multi-caliber rifle, bearing serial number SCB908110 |
| April 16, 2025 | SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA | (1) Masterpiece Arms, model MPA30T, 9mm caliber pistol, bearing serial number FX56940; and<br><br>(2) Privately manufactured AR-15 style rifle (commonly referred to as a "ghost gun") |
| May 28, 2025 | A. SALAZAR | Ruger, model 5.7, 5.7x28mm caliber pistol, bearing serial number 643-53862 |
| July 30, 2025 | SALAZAR-CRUZ | Springfield Armory, model 1911A1, .45 caliber pistol, bearing serial number NM185438 |

15

COUNTS FOUR THROUGH TEN

[18 U.S.C. § 922(g)(5)(A)]

[DEFENDANT SALAZAR-CRUZ]

On or about the following dates, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly possessed the following firearms, each in and affecting interstate and foreign commerce:

| COUNT | DATE | FIREARM(S) |
|---|---|---|
| FOUR | December 16, 2024 | (1) Cobray S/S, 12-gauge shotgun, bearing serial number SH540; <br><br>(2) Defcon-15, .233 caliber rifle, bearing serial number AB000117; and <br><br>(3) Smith & Wesson, .40 caliber pistol, bearing serial number FXN6379 |
| FIVE | December 17, 2024 | NORINCO, 7.62 caliber rifle, bearing serial number 9358116 |
| SIX | January 21, 2025 | (1) Just Right Carbine, LLC J R Carbine, multi-caliber rifle, bearing serial number JRCV045882; <br><br>(2) Glock, model 21, .45 caliber pistol, bearing BNB617US; and <br><br>(3) IZHMASH IJ70, 9mm caliber pistol, bearing serial number A OT 1318 |
| SEVEN | January 23, 2025 | (1) Smith & Wesson M&P 9 Shield, 9mm caliber pistol, bearing serial number NEL6813; and <br><br>(2) Taurus, model PT101P, .40 caliber pistol, bearing serial number SCT28627 |
| EIGHT | March 5, 2025 | (1) Taurus, 9mm caliber pistol, bearing serial number ACD736317; <br><br>(2) American Tactical Imports ATI FXH-45, .45 caliber pistol, bearing serial number TB114942; and |

16

| COUNT | DATE | FIREARM(S) |
|-------|------|-----------|
|       |      | (3) Palmetto State Armory PA-15, multi-caliber rifle, bearing serial number SCB908110 |
| NINE  | April 16, 2025 | Masterpiece Arms, model MPA30T, 9mm caliber pistol, bearing serial number FX56940 |
| TEN   | July 30, 2025 | Springfield Armory, model 1911A1, .45 caliber pistol, bearing serial number NM185438 |

Defendant SALAZAR-CRUZ possessed such firearms knowing that he was an alien illegally and unlawfully in the United States.

17

COUNT ELEVEN

[18 U.S.C. § 922(g)(5)(A)]

[DEFENDANT A. SALAZAR]

On or about May 28, 2025, in Los Angeles County, within the Central District of California, defendant ALFONSO SALAZAR, also known as "Pirate," knowingly possessed a firearm, namely, a Ruger, model 5.7, 5.7x28mm caliber pistol, bearing serial number 643-53862, in and affecting interstate and foreign commerce.

Defendant A. SALAZAR possessed such firearm knowing that he was an alien illegally and unlawfully in the United States.

18

COUNT TWELVE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT SALAZAR-CRUZ]

On or about February 8, 2024, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 50 grams, that is, approximately 894.2 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT SALAZAR-CRUZ]

On or about March 21, 2024, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 50 grams, that is, approximately 447.6 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT SALAZAR-CRUZ]

On or about December 17, 2024, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 50 grams, that is, approximately 454.3 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIFTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT SALAZAR-CRUZ]

On or about January 21, 2025, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 50 grams, that is, approximately 445.9 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT SALAZAR-CRUZ]

On or about January 21, 2025, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 40 grams, that is, approximately 324 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT SALAZAR-CRUZ]

On or about January 23, 2025, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 40 grams, that is, approximately 246.3 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT EIGHTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT SALAZAR-CRUZ]

On or about March 5, 2025, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 40 grams, that is, approximately 251 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT NINETEEN

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT PANIAGUA]

On or about March 20, 2025, in San Bernardino County, within the Central District of California, defendant JOSE ANGEL LOPEZ PANIAGUA knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 449.15 grams, of methamphetamine, a Schedule II controlled substance.

26

COUNT TWENTY

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT PANIAGUA]

On or about March 20, 2025, in San Bernardino County, within the Central District of California, defendant JOSE ANGEL LOPEZ PANIAGUA knowingly possessed firearms, namely, a privately manufactured AR-style rifle bearing no serial number (commonly referred to as a "ghost gun"), a Rock Island model 1911, .45 caliber pistol, bearing serial number RIA2159682, and a privately manufactured 9mm caliber pistol bearing no serial number (commonly referred to as a "ghost gun"), in furtherance of a drug trafficking crime, namely, possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), as charged in Count Nineteen of this Indictment.

COUNT TWENTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT PANIAGUA]

On or about March 20, 2025, in San Bernardino County, within the Central District of California, defendant JOSE ANGEL LOPEZ PANIAGUA knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 54.63 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-TWO

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT PANIAGUA]

On or about March 20, 2025, in San Bernardino County, within the Central District of California, defendant JOSE ANGEL LOPEZ PANIAGUA knowingly possessed firearms, namely, an AK-47 rifle, bearing serial number 8703562, and a Western Silver Glock model 43x9mm caliber pistol, bearing serial number BEAR987, in furtherance of a drug trafficking crime, namely, possession with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi), as charged in Count Twenty-One of this Indictment.

29

COUNT TWENTY-THREE

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA]

On or about April 16, 2025, in Los Angeles County, within the Central District of California, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," JOSE MANUEL SALAZAR, aka "Lil Oso," and JOSE ANGEL LOPEZ PANIAGUA, each aiding and abetting the others, knowingly and intentionally distributed at least 40 grams, that is, approximately 251.1 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS SALAZAR-CRUZ and A. SALAZAR]

On or about May 28, 2025, in Los Angeles County, within the Central District of California, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," and ALFONSO SALAZAR, aka "Pirate," each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 886.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT SALAZAR-CRUZ]

On or about July 30, 2025, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly and intentionally distributed at least 50 grams, that is, approximately 1,152.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-SIX

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS SALAZAR-CRUZ and PANIAGUA]

On or about December 19, 2025, in Los Angeles County, within the Central District of California, defendants JOSE LUIS SALAZAR-CRUZ, also known as "Oso," and JOSE ANGEL LOPEZ PANIAGUA, each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 2,265 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-SEVEN

[18 U.S.C. § 933(a)(1)]

[DEFENDANT SALAZAR-CRUZ]

On or about December 17, 2024, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly shipped, transported, transferred, caused to be transported, and otherwise disposed of a firearm to another person, namely, a NORINCO, 7.62 caliber rifle, bearing serial number 9358116, in and affecting interstate commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of the firearm by the recipient would constitute a felony, namely, engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).

34

COUNT TWENTY-EIGHT

[26 U.S.C. § 5861(d)]

[DEFENDANT SALAZAR-CRUZ]

On or about December 16, 2024, in Los Angeles County, within the Central District of California, defendant JOSE LUIS SALAZAR-CRUZ, also known as "Oso," knowingly possessed a firearm, namely, a Cobray S/S 12-gauge shotgun, the barrel of which had a bore of more than one-half inch in diameter, bearing serial number SH540, which defendant SALAZAR-CRUZ knew to be a firearm and a destructive device, as defined in Title 26, United States Code, Section 5845(a)(8) and (f)(2), and which had not been registered to defendant SALAZAR-CRUZ in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

COUNT TWENTY-NINE

[26 U.S.C. § 5861(d); 18 U.S.C. § 2(a)]

[DEFENDANTS SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA]

On or about April 16, 2025, in Los Angeles County, within the Central District of California, defendants JOSE LUIS SALAZAR-CRUZ, also known as ("aka") "Oso," JOSE MANUEL SALAZAR, aka "Lil Oso," and JOSE ANGEL LOPEZ PANIAGUA, each aiding and abetting the others, knowingly possessed a firearm, namely, a privately manufactured AR-style rifle bearing no serial number (commonly referred to as a "ghost gun"), with a barrel of less than 16 inches in length, which defendants SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Section 5845(a)(3) and (c), and which had not been registered to defendants SALAZAR-CRUZ, J.M. SALAZAR, and PANIAGUA in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in any of Counts One, Twelve through Nineteen, Twenty-One, Twenty-Three and Twenty-Four of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)  All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

39

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Three through Eleven and Counts Twenty and Twenty-Two of this Indictment.

4.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. §§ 934 and 924]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 934(a)(1) and 924(d), in the event of the defendant's conviction of the offense set forth in Count Twenty-Seven of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation;

(b)  All right, title, and interest in any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;

(c)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has

41

been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FIVE

[26 U.S.C. § 5872 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in either of Counts Twenty-Eight or Twenty-Nine of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm involved in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has

///

///

///

43

been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Chief, Major Crimes Section

CLIFFORD D. MPARE
Assistant United States Attorneys
Major Crimes Section

44